UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KATHY A. SCOPEL, | ) | Case No. 5:19-cv-2491 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| -vs- | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| Defendant. | ) | |

## I. Introduction

Plaintiff, Kathy Scopel, seeks judicial review of the final decision of the Commissioner of Social Security, Andrew Saul, denying her application for supplemental-security income under Title XVI of the Social Security Act. This matter is before me under 42 U.S.C. § 405(g) and Local Rule 72.2(b). Because the administrative law judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Scopel's application for supplemental-security income be AFFIRMED.

## II. Procedural History

Scopel originally applied for a period of social-security insurance benefits on November 8, 2012, for a disability period beginning on February 26, 2010. (ECF No. 11 at 123). The Ohio Division of Disability Determination (the "State Agency") initially denied her claim on February 19, 2013, and again on reconsideration on May 22, 2013. (ECF No. 11 at 123). On May 22, 2013, she requested a hearing; ALJ James Hill oversaw the November 18, 2014 hearing. ALJ Hill issued

1

an unfavorable decision on November 26, 2014. (ECF No. 11 at 120). The Appeals Council declined to set aside ALJ Hill's decision on February 22, 2016. (ECF No. 11 at 169).

Scopel then initiated this action by applying for social-security insurance benefits again on July 11, 2016, for a disability period beginning on April 1, 2014. (Tr. of Proceedings before the Soc. Sec. Admin., ECF No. 11 at 256). The State Agency initially denied her claim on September 27, 2016 (ECF No. 1 at 144-54), and again at the reconsideration stage on December 19, 2016. (ECF No. 11 at 156-67). Scopel requested a hearing before an ALJ on January 12, 2017. (ECF No. 11 at 193). Gregory M. Beatty ("the ALJ") oversaw the hearing on July 26, 2018. (ECF No. 11 at 54). Scopel testified at the hearing, and Michael De Maria appeared as Scopel's counsel. (ECF No. 11 at 54). Vocational Expert Daniel Simone also testified. (ECF No. 11 at 54). On September 6, 2018, the ALJ rendered an unfavorable decision on Scopel's claim. (ECF No. 11 at 30). Scopel provided additional medical records to the Appeals Council on September 6, 2018. (ECF No. 11 at 18-29). On August 27, 2019, the Appeals Council denied Scopel's request to set aside the ALJ's decision. (ECF No. 11 at 6-12). This appeal followed. (ECF No. 1).

### III. Relevant Background[1]

#### A. Medical Evidence

The record contains the objective medical notes of Wayne Gross, D.O., concerning Scopel's cardiac impairment dating from 2010 to 2018. At an August 27, 2015 visit, Gross admitted Scopel to the hospital for outpatient heart catherization. (ECF No. 11 at 605). He did so because she was experiencing atypical chest pain. (ECF No. 11 at 605). The heart catherization

---

[1] Although Scopel's brief includes a more wide-ranging factual recitation, she raises only one issue: the weight accorded to Gross's cardiac medical source statement. The Court addresses only those portions of the record that are relevant to resolving her assignment of error.

"demonstrate[d] diffuse 40% disease in the [left anterior descending artery] and circumflex, 60% very, very small [right coronary artery]." (ECF No. 11 at 605). The right coronary artery issue was "too small to do a stent" procedure. (ECF No. 11 at 605). Gross diagnosed Scopel with "mild coronary artery disease … predominantly involving the [left anterior descending artery]." (ECF No. 11 at 361). Gross noted various levels of arterial stenosis. (ECF No. 11 at 362). At discharge, Scopel was instructed to restrict her activity for two days but was cleared for exercise programs. (ECF No. 11 at 605).

Scopel followed up with certified nurse practitioners Jennifer Melegari and Elizabeth Moore on September 23, 2015. (ECF No. 11 at 369). They noted that Scopel had "had no chest discomfort suggestive of ischemia. She denies claudication. There is no discoloration or ulceration of the lower extremities. She has had no [transient ischemic attack] or stroke-like symptoms." (ECF No. 11 at 369). Gross also observed Scopel that day, noting that she was responding well to her medical treatments. (ECF No. 11 at 373). Gross instructed Scopel to reduce her stress and stop smoking. (ECF No. 11 at 373).

Scopel next saw Gross, Melegari, and Moore on February 2, 2016. (ECF No. 11 at 354). Scopel's cardiac symptoms were negative. (ECF No. 11 at 354). They noted that she had continued smoking daily, but she lived a moderately active life. (ECF No. 11 at 357). Gross adjusted Scopel's medications and instructed her to return for a follow-up appointment in nine months. (ECF No. 11 at 359). Scopel visited Melegari on July 5, 2016, for a follow-up appointment. (ECF No. 11 at 425). Melegari noted that Scopel was in "good compliance with [her] treatment, good tolerance of [the] treatment[,] and good symptom control." (ECF No. 11 at 425). Scopel reported no chest pain, edema, or heart palpitations. (ECF No. 11 at 427). She had normal heart sounds, and her heart was

beating at a regular rate and rhythm without murmurs or abnormal pedal pulses. (ECF No. 11 at 428).

Scopel saw Kevin Miller, M.D., at the emergency department on January 23, 2017, for intermittent chest pain. (ECF No. 11 at 770). The pain increased with movement; it was worse when Scopel lied on her right side and went towards her back. (ECF No. 11 t 770). Scopel did not experience heart palpitations. (ECF No. 11 at 770). The emergency physicians did not note any "murmurs, gallops, or rubs"; Scopel's heart was beating at a regular rate and rhythm; and she was breathing regularly without wheezes, rales, or rhonchi. (ECF No. 11 at 770). Miller did not "believe that [Scopel] warrant[ed] further workup for her chest discomfort." (ECF No. 11 at 771). Scopel saw Miller again on February 5, 2017. (ECF No. 833-34). Miller noted that Scopel had the same general findings as her emergency visit two weeks earlier and her EKG was normal. (ECF No. 11 at 834).

On March 2, 2017, Brendan Duffy, M.D., placed a cardiac catheter in Scopel's left anterior descending and circumflex coronary artery. (ECF No. 11 at 595). Duffy noted a "tubular, 90% stenosis. The lesion is a likely culprit for the patient's clinical presentation…" (ECF No. 11 at 595). Duffy stented the stenosis with a balloon angioplasty, resulting in "a residual 0% stenosis with an excellent angiographic appearance and TIMI grad 3 flow (brisk flow)." (ECF No. 11 at 595). Gross authored Scopel's discharge summary, restricting her activity for 48 hours but noting that she was doing remarkably well. (ECF No. 11 at 603). Scopel attended two cardiac rehabilitation treatments after this procedure. (ECF No. 11 at 856, 872).

Scopel visited Gross on May 9, 2017, for a cardiac stress test. (ECF No. 11 at 588). Gross noted a "slight decreased perfusion of the interior wall. Inferior wall scar is seen. There is no sign of ischemia… The left ventricular ejection fraction was calculated at 65%." (ECF No. 11 at 588).

Gross concluded that Scopel's EKG was benign, and her hemodynamic response was normal. (ECF No. 11 at 588). Two weeks later, Gross issued a more comprehensive report after a follow-up visit. He noted that Scopel had improved since her last visit; was tolerating transient-ischemic-attack medical therapies well and without bruising; her stented coronary arteries were normal; and that she had no chest pain, orthopnea, palpitations, syncope, or PND. (ECF No. 11 at 544-45).

Scopel saw Gross again on September 28, 2017. (ECF No. 11 at 699). Gross again noted that Scopel had no chest pain, orthopnea, palpitations, syncope, PND, or claudication. (ECF No. 11 at 703). She had a regular heart rhythm, no palpitations, regular heart sounds, and no extra sounds. (ECF No. 11 at 704). Gross noted that Scopel's transient-ischemic-attack history was "stable." (ECF No. 11 at 705).

Gross saw Scopel again on March 29, 2018. (ECF No. 11 at 692). He noted similar cardiac findings as his September 28, 2017 notes, except that Scopel had a grade II/VI systolic ejection murmur. (ECF No. 11 at 691-93). Scopel denied any chest discomfort. (ECF No. 11 at 693).

**B.     Opinion Evidence**

Gross authored a cardiac medical-source statement on Scopel's behalf on September 28, 2017. (ECF No. 11 at 540-44). The opinion contained 15 questions that assessed Scopel's cardiac impairments. (ECF No. 11 at 540). Gross stated that he had treated Scopel for 96 months and diagnosed her with a NYHA (New York Heart Association) Class I functional impairment. (ECF No. 11 at 540). Gross noted that Scopel's prognosis was excellent based on her clinical findings, laboratory results, and test results. (ECF No. 11 at 540). Her symptoms were chest pain and exertional dyspnea. (ECF No. 11 at 540). Gross noted that Scopel had not had any angina episodes since she had a stent put in, and that she did not have to rest after any angina episode. (ECF No. 11 at 540). He mentioned that Scopel experienced bruising from the Plavix and drowsiness from

5

Verapamil. (ECF No. 11 at 541). Responding to the role that stress plays in Scopel's symptoms, he stated simply "a lot." (ECF No. 11 at 541).

Gross opined that Scopel could tolerate only "moderate stress—normal work" stress. (ECF No. 11 at 541). He explained that opinion with three words that appear to be "felt stress normal." (ECF No. 11 at 541). Gross noted that Scopel's symptoms did not cause emotional difficulties such as depression or anxiety. (ECF No. 11 at 541). He felt that emotional factors contributed to the severity of Scopel's symptoms and limitations, but he did not explain why or to what extent. (ECF No. 11 at 541). He noted that her symptoms had lasted at least twelve months. (ECF No. 11 at 541).

Question 12, which contained 10 sub-questions, asked Gross to "estimate [Scopel's] functional limitations if [she] were placed in a competitive work situation." (ECF No. 11 at 541). Gross opined that Scopel:

a. Could walk only one city block without rest or severe pain;
b. Could sit for about four hours in an eight-hour workday, and stand for less than two hours in an eight-hour workday;
c. Needs a job that permits shifting positions at will from sitting, standing, and walking;
d. Never needs to take unscheduled breaks;
e. Does not need to elevate her legs during periods of prolonged sitting;
f. Can frequently lift 10 pounds or less, rarely lift 20 pounds, and never lift 50 pounds;
g. Can frequently twist and stoop, occasionally crouch and climb stairs, and rarely climb ladders;
h. Is advised to avoid concentrated exposure to extreme cold or heat and high humidity;
i. Is not expected to be off task at all because of her symptoms; and
j. Would never be absent because of her impairments or treatments, despite likely having "good days" and "bad days."

(ECF No. 11 at 542-43). Gross then noted that Scopel's "impairments … as demonstrated by signs, clinical findings[,] and laboratory or test results [are not] *reasonably consistent* with the symptoms and functional limitations described above…" (ECF No. 11 at 543). Gross noted that, in his

opinion, Scopel's earliest date of symptoms and limitations was January 2017. (ECF No. 11 at 543).

IV.  **The ALJ's Decision**

As is relevant here, the ALJ issued the following findings of fact:

> 4. … [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except that the claimant may frequently handle and finger with the bilateral upper extremities; … may occasionally stoop, kneel, crouch, crawl, climb ramps and stairs, but may never climb ladders, ropes[,] or scaffolds; … must avoid concentrated exposure to wetness, humidity, extremes of heat and cold, and pulmonary irritants, including dust, odors, gases, fumes and poor ventilation, and all exposure to workplace hazards, including unprotected heights, dangerous moving machinery and operation of a motor vehicle. This finding departs from that of the previous decision, in order to accommodate the current state of the impairments, as documented in the present evidentiary record.
> …
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform … This finding adheres to that of the previous decision.

(ECF No. 11 at 37, 45).

V.  **Law and Analysis**

   A.  **Standard of Review**

The court's review is limited to determining whether the ALJ applied proper legal standards and reached a decision supported by substantial evidence. 42 U.S.C. § 405(g); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is "more than a scintilla" of relevant evidence; a reasonable person "might accept [it] as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Under this standard of review, a court cannot decide the facts anew, make credibility determinations, or re-weigh the evidence; if the Commissioner's findings as to any fact are supported by substantial evidence, then those findings are conclusive. 42 U.S.C. § 405(g); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor when testifying."). The decisive question is whether the ALJ's conclusions are "substantially supported in the record." *Rogers*, 486 F.3d at 241. If so, then the court must affirm the Commissioner's findings, even if the court does not agree with the Commissioner's decision, or substantial evidence exists to support an alternative result. *Elam*, 348 F.3d at 125 ("The decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without the court second guessing him. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Despite this deference, a court will not uphold the Commissioner's decision if the ALJ failed to apply proper legal standards—"fails to follow its own regulations"—unless the error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006). Legal error is harmless if the "error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Id.* And the court will not remand a case for further administrative proceedings absent prejudice on the merits or a deprivation of substantial procedural rights. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Similarly, if the ALJ failed to "build an accurate and logical bridge between the evidence and the result," then the court cannot uphold the ALJ's decision, even one supported by substantial evidence. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)

8

(citing *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)). This and other 6th Circuit District Courts follow *Sarchet*'s logical-bridge requirement[2] because it ensures that a claimant will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

### B. Application of the Treating-Physician Rule to Gross's Opinion

When Scopel filed her claim, 20 C.F.R. § 416.927 (then the applicable regulation[3]) stated that an ALJ must give a treating source's opinion controlling weight if it: (1) is "well-supported

---

[2] *E.g. Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

[3] 20 C.F.R. § 416.927 was prospectively repealed on March 27, 2017. Because she filed her claim on July 11, 2016, the regulation controls Scopel's case.

by medically acceptable clinical and laboratory diagnostic techniques"; and (2) is not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (*repealed*, 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Controlling weight means that the ALJ "must adopt a treating source's medical opinion irrespective of any finding [that the ALJ] would have made in the absence of the medical opinion." Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9, at *5 (S.S.A. July 2, 1996) (*rescinded*, Recision of Social Security Rulings 96-2p, 96-5p, and 06-03p, 2017 WL 3928298 (S.S.A. Mar. 27, 2017).[4] "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the with other substantial evidence in the case record." SSR 96–2p, at *2.

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, then he must consider and appropriately weigh the opinion under six factors: (1) the nature of the examining relationship; (2) the scope of the treatment relationship; (3) the supportability of the evidence; (4) the opinion's consistency to the record as a whole; (5) the author's specialization to the relevant medical issue; and (6) the "other factors … that tend to support or contradict the medical opinion." 20 C.F.R. § 416.927(c). "In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned." *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[W]e will always give good reasons in [its] notice of determination or decision for the weight [it] give[s to a claimant's] treating source's medical opinion."). Good reasons are those that are "sufficiently specific to make clear

---

[4] SSR 96-2p was prospectively rescinded on March 27, 2017; it, too, controls Scopel's case.

10

to any subsequent reviewers the weight [that] the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, at *12. The good-reasons rule "permit[s] meaningful review of the ALJ's decision and … ensure[s] that a claimant is not bewildered when an administrative bureaucracy tells him that he is not disabled." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 786 (6th Cir. 2017) (internal citations omitted). Although the ALJ is required to consider the factors, the Sixth Circuit does not require that he describe each factor in his decision. *Francis v. Comm'r of Soc*. Sec., 414 F. App'x 802, 804 (6th Cir. 2011) ("[T]he regulations … expressly require only that the ALJ's decision include good reasons ... for the weight ... give[n] [to the] treating sources opinion—not an exhaustive factor-by-factor analysis.") (internal citations omitted). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). The ultimate question is whether the Commissioner's decision is supported by substantial evidence and whether the ALJ followed the administrative regulations. *Cole*, 661 F.3d at 939.

If the ALJ fails to state his good reasons and how they affected the weight accorded to the treating source's opinion, then it "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243. Such a failure requires remand. *Id*. But an ALJ's good-reasons narrative can be sufficient even though it is "brief" (*Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009)), "indirect[]" (*Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 471 (6th Cir. 2006)), or implied. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) ("[I]t is well settled that …an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit

11

of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts."). If the ALJ narrates the conflicting medical evidence elsewhere in the record, then the ALJ is not required to restate the conflicting medical evidence when explaining how a treating source's opinion is inconsistent with that evidence. *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016).

Scopel argues that the ALJ failed to properly evaluate Gross's treating-physician opinion. Frist, Scopel asserts that the ALJ neglected to apply the controlling weight test to Gross's opinion and did not consider whether his opinion was supported by the medical record. (ECF No. 12 at 8). The Commissioner disagrees. The Commissioner notes that Gross conceded that his opinion on Scopel's cardiac limitations was not "'reasonably consistent' with the medical signs, clinical findings, and test results" in the record. (ECF No. 14 at 8, 10 (quoting ECF No. 11 at 543)). The Commissioner believes that this demonstrates that the ALJ "properly assessed Dr. Gross's opinion in accordance with the agency's regulations" and, thus, did not procedurally err. (ECF No. 14 at 8, 10).

The ALJ justified his treatment of Gross's treating-source[5] opinion with the following narrative:

> [I]t is unlikely in the extreme that [Scopel] could have the limitations indicated, yet still be classified as able to perform normal work and to be assessed with a NYHA class I cardiac impairment. Dr. Gross conceded as much [in his opinion], noting that the symptoms and limitations included were not consistent with the objective findings (B13F/4), which remained, from a cardiac standpoint, stable. Because he concedes as much, his opinion is not eligible to be considered for assignment of controlling weight. Otherwise, and in

---

[5] The Commissioner does not dispute that Gross was a treating source, which is "your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Thus, the Court does not review it here.

> the broad sense that [Scopel] requires exertional postural, and environmental limitations, this opinion is at least marginally consistent with[,] and supported by, the evidence in the record, even if only by happenstance. Moreover, the environmental limitations suggested are known to be applicable in a setting with a cardiac impairment. Overall, this opinion is partially consistent with, and supported by, the evidence of record and is afforded partial weight.

(ECF No. 11 at 43-44).

The Court concludes that the ALJ properly applied the treating-physician rule. The ALJ stated that Gross's opinion was not due controlling weight because it was inconsistent with the rest of the medical record, noting that Scopel's cardiac condition "remained, from a cardiac standpoint, stable." (ECF No. 11 at 44). Although this particular rationale is short, the ALJ's narrative is sufficient because he referenced the inconsistent parts of the record in the preceding pages and, at least, indirectly attacked them as they related to Gross's opinion. *Nelson*, 195 F. App'x at 470-71.

Specifically, to demonstrate that Gross's opinion was inconsistent with the medical record, the ALJ referenced his seven-paragraph explanation of Scopel's cardiac impairment, which is found in his fourth finding of fact. (ECF No. 11 at 40-41). There, he summarized: Scopel's generally conservative cardiac treatments from 2015 to 2017; a 2017 stress test showing no evidence of ischemia or infarction; her prescription-medication regimen that tended to address her symptoms; her unilateral decision to abandon cardiac physical rehabilitation after only two sessions; her objective "systolic blood pressure readings of 140 mm/Hg or less and diastolic pressures of 90 mm/Hg or less"; her mildly adverse or nominal findings for heart rate and rhythm, heart sounds, edemas, and peripheral pulses; and her history as a long-time smoker. (ECF No. 11 at 40-41).

Additionally, the ALJ noted that the environmental limitations Gross suggested were inconsistent with Gross's own opinion. The ALJ explained that "it is unlikely in the extreme that

13

[Scopel] could have the limitations indicated [by Gross's opinion]"—standing less than two hours out of an eight-hour day, walking only one block,[6] and requiring sedentary-level work—"yet still be classified as able to perform normal work and to be assessed with a NYHA Class I cardiac impairment." (ECF No. 11 at 43-44). As the Commissioner points out, a NYHA Class 1 cardiac impairment connotes "no limitation of physical activity. Ordinary physical activity does not cause undue fatigue, palpitation, [or] dyspnea." (ECF No. 14 at 12). Moreover, the ALJ highlighted that Gross himself noted the inconsistency of his opinion against the medical evidence. (ECF No. 11 at 543). When asked whether Scopel's "impairments … as demonstrated by signs, clinical findings[,] and laboratory or test results [are] *reasonably consistent* with the symptoms and functional limitations described above in this evaluation," Gross responded "no." (ECF No. 11 at 543) (emphasis in original). He explained that answer in two words: "cardiac stable." (ECF No. 11 at 543). Despite these inconsistencies, the ALJ still gave Gross's opinion partial weight, noting that its stance on Scopel's exertional, postural, and environmental limitations was "marginally consistent with[,] and supported by, the evidence of record." The ALJ further noted that "the environmental limitations [that Gross] suggested are known to be applicable in a setting with a cardiac impairment." (ECF No. 11 at 44).

Accordingly, the record demonstrates that the ALJ adequately reviewed Gross's opinion and substantial evidence supports the ALJ's decision to not accord it controlling weight.

Second, Scopel argues that the ALJ failed to provide good reasons for discrediting Gross's opinion. (ECF No. 12 at 9). Specifically, Scopel contends that the ALJ did not provide any

---

[6] Scopel attempts to draw a parallel between her use of a cane for walking and Gross's cardiac assessment. (ECF No. 12 at 9). But this is a concededly false connection: Scopel's brief explains that she had chronic ankle pain from a severe sprain; thus, she walked with a cane or a walker. (ECF No. 12 at 3). Scopel does not directly connect her ambulatory difficulties to her cardiac condition.

explanation for his conclusion that Gross's opinion was internally inconsistent and did not explain why this was a good reason to discredit Gross's opinion. (ECF No. 12 at 10). Also, Scopel asserts that the ALJ discredited Gross's opinion, in part, based on a factual inaccuracy, which could not be a good reason. (ECF No. 12 at 10). The Commissioner disagrees. The Commissioner contends that the ALJ adequately explained his good reasons for giving Gross's opinion less than controlling weight when he discussed the inconsistencies between Gross's opinion and the medical record. (ECF No. 14 at 11-12). The Commissioner acknowledges that the ALJ included his good reason analysis alongside his analysis of whether Gross's opinion was entitled to controlling weight, but argues that this is not error, asserting that "ALJs [do not] commit error when they do not separate the controlling weight analysis from the discussion of the § 416.927(c) factors." (ECF No. 14 at 10 (citing *Ware v. Comm'r of Soc. Sec.*, No. 16-cv-2375, 2018 WL 1202588, at *5-6 (N.D. Ohio Mar. 8, 2018)). The Commissioner argues that the ALJ applied the § 416.927(c) factors and provided good reasons for giving Gross's opinion partial weight. (ECF No. 14 at 11).

The Court agrees with the Commissioner: The ALJ did not err by discussing the controlling-weight analysis and his good reasons together. The court must consider the ALJ's decision as a whole; the ALJ satisfies the good-reasons standard if he reviews and evaluates the evidence and affords this court the opportunity to meaningfully review his opinion. *Hanft v. Colvin*, No. 1:15-CV-200, 2015 WL 5896058, at *10 (N.D. Ohio Oct. 8, 2015) (citing *Nelson*, 195 F. App'x at 470–71); *see also Crum*, 660 F. App'x at 455 (finding remand "not warranted" where "the ALJ's conclusion was sufficiently supported by factual findings elsewhere in the decision.") (citations omitted)); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("[T]he procedural protections at the heart of the rule may be met when the supportability of a doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's

analysis of a physician's other opinions or his analysis of the claimant's ailments. Thus[,] the procedural rule is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.") (internal citations omitted).

Here, the ALJ adequately evaluated the evidence and amply discussed it throughout the decision, which meets the good-reasons standard. The ALJ provided good reasons for giving Gross's opinion partial weight by discussing the inconsistencies between Gross's opinion and the medical record as noted above in the controlling-weight analysis.

Scopel's final argument, which asserts that the ALJ discredited Gross's opinion because he characterized it as endorsing Scopel's ability to do "normal work," is also meritless. (ECF No. 12 at 10 (referring to ECF No. 11 at 43-44)). Scopel argues that this is a misrepresentation of Gross's opinion and, thus, not a legally sufficient good reason. (ECF No. 12 at 10). Scopel alleges that "the ALJ clearly misunderstood what Dr. Gross was opining and[,] in turn[,] relied on that mistake to discredit Dr. Gross's own opinions." (ECF No. 12 at 10). The record shows that Gross's opinion evaluated "[t]o what degree can [Scopel] tolerate work stress." (ECF No. 11 at 541). Gross checked the box that stated "[c]apable of moderate stress—normal work." (ECF No. 11 at 541). Scopel argues that, in that context, "Gross was not indicating that he believed Ms. Scopel could perform normal work," but that "Ms. Scopel was capable of engaging in moderate stress or normal stress" at work. (ECF No. 14 at 10).

The court does not need to resolve this alleged discrepancy. The ALJ's narrative shows that he did not rely solely on this alleged mischaracterization of Gross's opinion to give Gross's opinion partial weight; rather, he narrated the inconsistences between Gross's opinion and the

16

medical record and specifically referenced Gross's admission that his opinion reasonably conflicted with the medical evidence. (ECF No. 11 at 40-44). Even assuming that the ALJ incorrectly interpreted Gross's response to the work-stress question, the ALJ's additional reasons for giving Gross's opinion partial weight are supported by substantial evidence irrespective of the ALJ's alleged mischaracterization.

Because the ALJ evaluated the evidence and, through his decision, afforded this Court the opportunity to meaningfully review his conclusions, Scopel's argument that the ALJ violated the treating-source rule by failing to give good reasons for the weight given to Gross's opinion is without merit.

## VI. Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Scopel's application for supplemental-security income be AFFIRMED.

DATED: 10/29/2020

*Carmen Henderson*
Carmen E. Henderson
United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); see also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).